PEDRO ROSELLÓ CRUZ, ETC., demandantes y peticionarios, *v.* ING. PEDRO LUIS GARCÍA y OTROS, demandados y recurridos.

*Número:* R-83-181      *Resuelto:* 28 de junio de 1985

*Eugenio Rivera Lozada,* abogado de los recurrentes; *Pablo R. Cancio,* de *Cancio & Cancio,* abogado de los recurridos Pedro Luis García y su esposa Aida Román Vargas y la sociedad legal de gananciales compuesta por éstos.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Una edificación de hormigón construida para el matrimonio demandante aquí recurrente y entregádale en enero de

1973, manifestó grietas y desniveles de tal magnitud que para el año 1975 constituía prácticamente una ruina total. Demandados el contratista y el ingeniero que hizo los planos y supervisó la construcción, el tribunal desestimó la demanda luego de recibir la prueba de los demandantes, al amparo de la Regla 39.2 (c) de Procedimiento Civil. (¹) Concluyó que conforme a dicha prueba la ruina se debió a una falla o fractura geológica que ocasionó una desnivelación del terreno, hecho que no podía considerarse previsible. Incidió. Bajo el Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124, (²) se establece una presunción *juris tantum* de culpa o negligencia de parte de los constructores y arquitectos, que compete a éstos destruir por preponderancia de prueba. Esá presunción aplica al ingeniero que en este caso hizo las veces de arquitecto.

## I

Veamos los hechos. Don Pedro Roselló Cruz y su esposa doña Lydia Torres de Roselló compraron un predio de terreno de una cuerda en el área de San Sebastián. Contrataron al

---

(¹) Dispone:

"(c) Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos."

(²) Dice así:

"El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

"Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince años."

Ing. Pedro Luis García para que les preparara los planos para construir una casa para residencia en dicho terreno, y al Sr. Efraín Acevedo para que la construyera. El precio de construcción pactado fue $49,800 y el de los planos $800.

A petición del contratista, el ingeniero García supervisó los trabajos de construcción para que se efectuaran de acuerdo con las especificaciones del plano.

En enero de 1973 terminó la construcción y la Junta de Planificación expidió permiso de uso. Los esposos Roselló quedaron satisfechos con la casa. Para esa fecha ellos residían en la ciudad de Nueva York y la casa fue habitada por familiares.

En marzo de 1973 una pared de la sala se agrietó. Doña Lydia vino a Puerto Rico y notificó al señor Acevedo. Éste avisó al ingeniero García y ambos inspeccionaron la casa y repararon la pared. Luego, en el mes de julio, los esposos Roselló Torres fueron notificados de que el piso de la sala y la escalera se estaban partiendo. Avisaron nuevamente al señor Acevedo y al señor García y éstos construyeron un muro de contención debajo de la sala. Al año siguiente la casa se agrietó por la pared de la cocina. Nuevamente la señora Torres vino a Puerto Rico y se reunió con los señores Acevedo y García. Acordaron que el señor García haría un plano de reconstrucción pero ésta no se realizó porque había que variar la fachada y la señora Torres no estaba de acuerdo. En septiembre de 1975 ocurrió la tormenta Eloísa y los daños aumentaron. Un "informe técnico" sometido por el perito, ingeniero Sr. Jorge M. Guillermety y admitido como prueba de los demandantes revela en todo su dramatismo la magnitud de la ruina de la edificación. (³)

---

(³) Expresa lo siguiente dicho informe:

"La estructura es de hormigón armado con algunas paredes aparentemente de bloques. Es de dos (2) plantas con un área de 2,432 pies cuadrados por planta. Mide en su ancho, dirección Este a Oeste 32' y en su profundidad dirección hacia la Quebrada Sala, de Sur a Norte 64'. La primera planta es abierta y s[ó]lo se pueden apreciar las columnas que sostienen la 2da.

En julio de 1976 los esposos Roselló Torres instaron demanda contra el ingeniero García y el contratista Acevedo y sus respectivas sociedades legales de bienes gananciales, en que reclamaron por los daños causados y sufridos por ellos al arruinarse su casa por vicios del suelo, de la dirección, del diseño y de la construcción.

Fue el caso a juicio y luego de presentada la prueba de la parte demandante el tribunal declaró sin lugar la demanda al amparo de la Regla 39.2 (c) de Procedimiento Civil citada. Determinó a base del testimonio pericial del ingeniero Jorge M. Guillermety, que la ruina de la casa de los demandantes se debió a una falla o fractura geológica que ocasionó la separación de dos masas de terreno, falla que afectó también a

---

planta. Esta 2da. planta es el área donde están los aposentos corrientes de una vivienda como, sala comedor, cuartos, baños, etc.

"La fachada arquitectónica no se aprecia muy bien por la total destrucción en que se encuentra pero tiene razgos [sic] poco usuales de esta área y que junto a su amplitud de área de 2,432 pies cuadrados por planta para un total de 4,864 pies cuadrados la asemejan y comparan con residencias de zonas de alto nivel económico como Garden Hills, San Francisco y Santa María en San Juan, la Rambla en Ponce y Montemar en Aguadilla.

"Se pudo observar en nuestra visita un asentamiento total y aparentemente casi uniforme de como 85% del área de la casa. Este asentamiento es hacia el lado Norte dejando s[ó]lo como un 15% a un nivel más alto en el lado Sureste. El asentamiento en el lado Su[re]ste tiene como 7' de diferencia en elevación. . . .

"Mirando la casa de frente desde la carretera Núm. 111 y en ese mismo lado Sureste la casa se ha mantenido a su nivel original que como dije antes es aproximadamente 7' más alto que el resto (o sea que el 85%). Esta diferencia de niveles ha ocasionado que en toda esta área Sureste se haya fracturado totalmente el hormigón de vigas, lozas de pisos y techo y las columnas. Estas fracturas se pueden apreciar en todos los niveles de la casa y son de tal magnitud que se puede apreciar en su totalidad todo el refuerzo (varillas) usado, naturalmente todo doblado hacia arriba. Además en todos estos miembros estructurales se puede ver a través porque la rajadura, la separación de la fractura es bien ancha. La estructura está completamente inservible para cualquier uso. Aparecen también grietas en la esquina Noroeste de la estructura y se pueden apreciar éstas en vigas y columnas y en lozas de piso y techo de la 1ra. planta. Estas grietas son de menor grado que en el lado Su[re]este. La ruina de la estructura es de tal naturaleza que hizo imposible por motivos de seguridad entrar en la 2da. planta para inspeccionarla por dentro." (*Exhibit* XII, págs. 67–68.)

cinco casas cercanas. Ambas masas de terreno quedaron a desnivel.

## II

El tribunal determinó que de la prueba presentada no podía concluirse razonablemente que el fenómeno geológico ocurrido en el área era previsible. Concluyó que se trató de un suceso que excedía visiblemente de los antecedentes que normalmente se tienen en cuenta para la construcción de una casa como la de los demandantes.

Los demandantes recurrieron ante nos. Plantean, en primer término, que no se les dio audiencia para argumentar una moción sobre determinaciones de hecho y derecho adicionales. No tienen razón. La Regla 43.3 de Procedimiento Civil no lo requiere.

En segundo término, plantean que erró el tribunal al desestimar la demanda luego de que los demandantes terminaron de presentar su prueba. Argumentan que a base de la norma establecida en *Irizarry* v. *A.F.F.*, 93 D.P.R. 416 (1966), y *Colombani* v. *Gob. Municipal de Bayamón*, 100 D.P.R. 120 (1971), el tribunal debió requerir del demandado que presentara su prueba, pues la del demandante no excluyó la negligencia del demandado.

El error fue cometido. La materia se rige por el Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124. Véase el escolio núm. 2, *ante*.

■ Según determinó el tribunal y aceptan los demandados en su alegato, la ruina de la casa de los demandantes se debió a una falla o fractura geológica. En su sentido literal, el Art. 1483, equivalente al 1.591 español, hace responsable de los vicios de construcción al constructor y de los del suelo o de la dirección al arquitecto que la dirige. Esta responsabilidad del arquitecto por los vicios del suelo se fundamenta en su deber de conocer el suelo sobre el que proyecta construir. Q. M. Scaevola, *Código Civil*, 2da ed. rev., Madrid, Ed. Reus,

1951, T. XXIV, Vol. II, págs. 111–114; J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1969, T. X, Vol. II, pág. 710; J. Cadarso Palau, *La responsabilidad decenal de arquitectos y constructores*, Madrid, Ed. Montecorvo, 1976, págs. 274–279.

Cadarso Palau señala que es impropio hablar de vicios de suelo porque "un suelo nunca es intrínsecamente vicioso; no lo es más que relativamente, es decir en función de las cargas que ha de soportar". íd., pág. 276. Concibe los vicios del suelo como una especie de vicios del proyecto. Éstos a su vez comprenden todos los defectos técnicos de concepción y disposición que violen las reglas del arte o afecten de cualquier manera a la solidez, al destino o al uso normal del edificio. Cadarso Palau, *op. cit.*, pág. 277. Los vicios del proyecto se refieren no sólo a las deficiencias de los planos, sino también a las indicaciones contenidas en las especificaciones o pliego de condiciones que acompañan a los planos.

Vicente Torralba Soriano cataloga los vicios del suelo en dos categorías: los de carácter general, y los vicios específicos que se ponen de manifiesto durante la ejecución de la obra. Los primeros son aquellos que cualquier arquitecto que ejerce en la zona geográfica donde se ha localizado el edificio conoce a causa de su profesión, ya que se trata de las condiciones generales que caracterizan el suelo de dicha zona y que deben tomarse en cuenta al desarrollar un proyecto para que el edificio resulte adecuado a las condiciones de ese suelo. Los vicios específicos se refieren a aquellas condiciones del suelo que pueden conocerse al empezar las obras, especialmente los trabajos de cimentación. V. Torralba Soriano, *Los vicios del suelo: reflexiones sobre el artículo 1.591 del Código Civil*, 23 An. Der. Civ. 123, 134 (1970).

Herrera Catena entiende que la responsabilidad exigible al arquitecto debe ir más allá del conocimiento sobre las condiciones generales del suelo donde ejerce su profesión y debe exigirse que en los casos complejos consulte geólogos acerca de

las características de los materiales naturales existentes en el sitio de la construcción. J. Herrera Catena, *Responsabilidades en la Construcción*, Granada, Ed. Gráficas del Sur, 1977, Vol. 2, págs. 222–224.

De acuerdo con Torralba Soriano, cuando en la construcción de un edificio el arquitecto que diseña el proyecto no es el mismo que dirige, ambos arquitectos responden solidariamente de los vicios del suelo. La razón de ello es que aunque el arquitecto director no haya intervenido en el diseño de la obra, por sus conocimientos profesionales puede darse cuenta de si el diseño resulta adecuado a las condiciones generales del suelo donde se levantará el edificio y tiene la obligación de hacer las modificaciones necesarias para enmendar los vicios del plano e incluso negarse a dirigir la construcción en caso de no ser posibles tales modificaciones. Torralba Soriano, *op. cit.*, pág. 135; J. Cadarso Palau, *El cumplimiento defectuoso y la responsabilidad por vicios del suelo en el contrato de obra*, 23 An. Der. Civ. 670, 676 (1970); J. M. Fernández Hierro, *La responsabilidad civil por vicios de construcción*, Bilbao, Pub. Univ. de Deusto, 1976, págs. 106–109; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed. rev., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, págs. 458–459; *Géigel* v. *Mariani*, 85 D.P.R. 46 (1962); *De Jesús* v. *Ponce Housing Corp.*, 104 D.P.R. 885 (1976). Por el contrario, de los vicios o defectos concretos del suelo donde se levanta el edificio sólo debe responder el arquitecto director debido a que normalmente tales defectos se conocen durante la ejecución de la obra, cuando ya ha terminado la labor del proyectista. Si al comenzarse las obras de construcción surgieran dificultades que no fueron tomadas en consideración en los planos, el arquitecto director de la obra viene obligado a tomar las medidas necesarias, incluso la revisión del proyecto, pues si sigue construyendo sin tomar las medidas correctivas incurriría en vicios de dirección. Herrera Catena, *op. cit.*, págs. 219–224.

■ El Art. 1483 establece una presunción *juris tantum* de culpa por parte de los constructores y arquitectos cuando ocurre la ruina de un edificio por vicios de construcción o del suelo. Esa es la posición generalmente aceptada por la doctrina española moderna. G. García Cantero, *La responsabilidad por ruina de los edificios ex artículo 1.591 del Código Civil*, 16 An. Der. Civ. 1054, 1104–1106 (1963); Herrera Catena, *op. cit.*, pág. 124 y ss.; Fernández Hierro, *op. cit.*, pág. 91. Esta presunción beneficia al propietario porque sólo tiene que probar el hecho de la ruina por vicios de la construcción o del suelo y no la culpa de los que intervinieron en la obra. Para librarse de responsabilidad el contratista, si se trata de vicios de la construcción, o el arquitecto, si se trata de vicios del suelo, vendría obligado a probar mediante preponderancia de prueba que no se deben a su intervención, sino que se trata de un caso de fuerza mayor, totalmente imprevisible e inevitable en los conocimientos y medios técnicos de la profesión. El concepto de fuerza mayor, como eximente de la responsabilidad de contratistas y arquitectos, debe entenderse en forma más restrictiva que de ordinario, pues se trata de sucesos que éstos tienen que tomar en consideración al edificar. Así, cuando la ruina, que causada por un terremoto, huracán, etc., pudo ser evitada por medio de la aplicación de los conocimientos y técnicas profesionales, no puede ser considerada un resultado de fuerza mayor. Fernández Hierro, *op. cit.*, págs. 98–100.

■ Si en lugar de un arquitecto, quien proyecta o dirige una obra es un ingeniero, la doctrina española sostiene que debe someterse a la misma responsabilidad que al arquitecto. Como fundamento de esta interpretación se señala el espíritu de la norma y las exigencias de garantías públicas que lleva consigo. Fernández Hierro, *op. cit.*, pág. 112. Estamos de acuerdo con esta interpretación pues responde a la realidad en nuestro medio de que en muchas ocasiones quien está a

cargo del diseño del proyecto y su dirección es un ingeniero y no un arquitecto.

## III

█ Atendidas las normas expuestas examinemos la actuación del tribunal de instancia al desestimar la demanda al amparo de la Regla 39.2 de Procedimiento Civil. En *Irizarry* v. *A.F.F.*, supra, resolvimos que esta regla autoriza al tribunal a aquilatar la prueba presentada por el demandante y a formular su apreciación de los hechos según la credibilidad que ésta le haya merecido sin que tenga que exigir la prueba presentada por el demandado, si llega al convencimiento de que el demandante no puede prevalecer. En caso de duda debe requerirle al demandado que presente su caso. *Colombani* v. *Gob. Municipal de Bayamón*, supra.

En el caso ante nuestra consideración el tribunal, luego de presentada la prueba de los demandantes, concluyó que la ruina se debió a una falla geológica impredecible e inevitable. Esta conclusión es contraria a la opinión del ingeniero estructural Guillermety, perito de la parte demandante, consignada en el "informe técnico" a que hicimos referencia anteriormente. Surge de dicho informe que se hizo una inspección de las residencias más próximas a la de los recurrentes, hallando condiciones similares.

Luego de hacer acopio de análisis de mapas geológicos del área y de estudios del terreno en que se asienta la casa, el perito Guillermety concluyó:

Consideramos la residencia de la familia Roselló Torres como ruina total. La estructura por su peligrosidad actual y la tendencia del terreno a seguir asentándose hacen el uso residencial impropio. La estructura se debe destruir o clausurar para evitar comprometer la seguridad de cualquier ser humano que trate de usarla.

La ruina total de la estructura se debe a los problemas del suelo donde está enclavado el 85% de ella. Problema cuya existencia y origen es difícil de indicar pero que data de

muchos años antes de su construcción y que un Ingeniero Civil lo hubiera [*sic*] detectado [en] seguida. El tipo de terreno donde está enclavado el 85% de la residencia y que ha sufrido y seguirá sufriendo asentamiento está formado por depósitos sedimentarios con las partículas de cenizas volcánicas típicas de esas áreas y es un suelo peligrosamente propenso a la erosión. Este factor combinado con el tipo de archilla [*sic*] montmorilonitica hicieron que se expandiera y contrayera dependiendo del agua que recibía y produce el comienzo del agrietamiento que se empeora con la erosión de sus partículas finas de la superficie.

Sabemos por los estudios de estos suelos que son extremadamente peligrosos por la erosión alta que tienen. Cualquier aguacero fuerte en el área, que se caracteriza por ser un área donde llueve mucho produce erosión en estos terrenos y hace que se desli[c]en poco a poco en dirección Norte.

Todo se hubiera podido haber previsto [*sic*] si el diseñador hace su "home work" correctamente y estudia el sitio, el área y sus alrededores junto con cualquier información adicional como el Mapa Hidro-geológico en existencia desde el 1965. Cualquier Ingeniero Civil aprende en sus clases de estructuras y de suelos lo suficiente para darse cuenta de la situación, por lo menos de los deslizamientos y esto le hubiera despertado el entendimiento para conseguir más información del área. (*Exhibit* XII, págs. 75–76.)

■ Habiéndose establecido que la ruina de la estructura ocurrió por vicios del suelo, opera contra el codemandado Pedro García, ingeniero que diseñó los planos y supervisó las etapas fundamentales del proyecto, una presunción de negligencia o culpa. Esta presunción que favorece a los demandantes quedó fortalecida por la opinión de su perito. El hecho de que el perito declarara que lo ocurrido es un fenómeno poco usual no es suficiente para liberar de responsabilidad al codemandado García, pues su profesión requiere que diseñe edificios que sean adecuados al suelo donde se ubiquen. Por ser el examen del suelo un elemento indispensable para poder descargar adecuadamente sus deberes profesionales para liberarse de responsabilidad tiene que establecer que el suceso que

causó la ruina era totalmente imprevisible e inevitable con los conocimientos y técnicas de la profesión al momento en que se realizó la obra. Como la prueba del demandante no excluyó la responsabilidad del codemandado Pedro García, el tribunal de instancia erró al desestimar la acción en su contra.

### IV

Por los fundamentos expuestos, *se revocará la sentencia recurrida en cuanto exoneró de responsabilidad al codemandado Pedro Luis García y la sociedad legal de gananciales constituida con su esposa, y se devolverán los autos al Tribunal Superior, Sala de Aguadilla, para ulteriores procedimientos compatibles con lo aquí expresado.*