Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JACQUELINE CARRERO T/C/P JACQUELINE ROSADO RODRÍGUEZ POR SI Y EN REPRESENTACIÓN DE RÍO GRANDE AUTO BODY INC, ET ALS.<br><br>Apelante<br><br>V.<br><br>ÁNGEL RAFAEL CARRERO FRED Y OTROS<br><br>Apelados | KLAN202400542 | Apelación Procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Caso Núm.: N3CI201600417 CONS. FA2019CV00154<br><br>Sobre: Entredicho Provisional, Interdicto Preliminar y Permanente; Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Candelaria Rosa y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de octubre de 2024.

Comparece la Sra. Jacqueline Carrero, T/C/P Jacqueline Rosado Rodríguez por sí y en representación de Río Grande Auto Body Inc. (en adelante, señora Rosado Rodríguez o Apelante) y solicita que revisemos una *Sentencia* emitida el 16 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI).[1] Mediante dicho dictamen, el foro primario declaró Ha Lugar la solicitud de desestimación contra la prueba (*Non-Suit*) presentada por la parte apelada al amparo de la Regla 39.2(c) de Procedimiento Civil y, en consecuencia, desestimó la demanda por insuficiencia de prueba.

---

[1] Apéndice de la *Apelación*, Exhibit 1, pág. 1. Archivada y notificada en autos el 3 de mayo de 2024.

Tras evaluar el expediente ante nuestra consideración, adelantamos que confirmamos en parte y devolvemos al foro primario para que disponga del asunto del usufructo viudal.

**-I-**

El caso ante nuestra consideración tiene su origen el 10 de agosto de 2016 con la presentación de una *Demanda* por la señora Rosado Rodríguez en contra de Ángel Rafael Carreo Fred, Yaritza Liz Carrero Fred y Otros (en conjunto, los Apelados).[2] bajo el caso número N3CI2016-00417. Solicitó un Entredicho Provisional y un Interdicto Preliminar y Permanente. Además, incluyó una acción en Daños y Perjuicios por los daños económicos, angustias mentales y alegados sufrimientos.[3]

El 23 de marzo de 2017 la Apelante presentó una *Moción Suplementaria a Solicitud De Interdicto Preliminar y Permanente y En Solicitud De Sumaria Parcial.* Los Apelados, por su parte, se opusieron el 5 de mayo de 2017. En agosto del mismo año se incluyó a la Sra. Carmen Milagros Fred Monge (en adelante, señora Fred Monge) por ser parte indispensable.[4]

Posteriormente, el 21 de febrero de 2019 la Apelante presentó una *Demanda* sobre Participación y Liquidación del Caudal Hereditario al que le fue asignado el alfanumérico FA2019CV00154.[5] Así las cosas, en una Vista celebrada el 25 de febrero de 2019, el TPI ordenó la consolidación con el caso previamente presentado.[6]

Tras varios trámites procesales, el 16 de julio de 2021 el TPI emitió una *Resolución.* Mediante esta, el foro primario declaró No Ha Lugar la *Moción Suplementaria A Solicitud De Interdicto Preliminar y*

---

[2] Caso Número N3CI2016-00417.
[3] *Íd.*, págs. 1-2.
[4] *Íd.*, pág. 2.
[5] Entrada Núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[6] Entrada Núm. 11 de SUMAC.

*Permanente y En Solicitud De Sentencia Sumaria Parcial* presentada por la Apelante. Además, el foro primario ordenó la celebración del juicio.[7]

El 13 de agosto del 2021 el TPI señaló la vista de conferencia con antelación a juicio para el 14 de diciembre de 2021.[8] El día de la vista, el foro primario le concedió término a la Apelante para proveer el *curriculum vitae* del psicólogo, el informe pericial y lo que declararían los testigos. Señaló el Juicio en su Fondo y la Continuación del Juicio en su Fondo para el 2, 3, 4 y 5 de mayo de 2022.[9]

Finalmente, el 3 de mayo de 2022 el TPI emitió una *Resolución.* Mediante esta, eliminó la utilización de un perito por haber sido anunciado después del descubrimiento de prueba y eliminó el informe del perito de ocurrencia por no haber presentado su *curriculum vitae* e informe pericial dentro del término para el descubrimiento de prueba.[10]

Luego de varias incidencias procesales, el 22 de febrero de 2024 el TPI celebró el juicio en su fondo.[11] Examinada la prueba, el 16 de abril de 2024 el foro primario dictó su *Sentencia* en la que formuló las siguientes Determinaciones de Hechos:[12]

1. La co-demandante, la señora Jaqueline Rosado Rodríguez t/c/p Jacqueline Carrero, es persona natural, mayor de edad, soltera y vecina del estado de la Florida.
2. El 27 de abril de 2010, la señora Rosado Rodríguez contrajo nupcias con el Ángel Rafael Carrero Mercado bajo el régimen económico de total separación de bienes.
3. El señor Ángel Rafael Carrero Mercado estuvo casado en primeras nupcias con la señora Carmen Milagros Fred Monge, matrimonio que se disolvió mediante Sentencia de Divorcio en el 2008. Ese matrimonio se rigió por el régimen económico de la sociedad legal de gananciales.
4. El señor Ángel Rafael Carrero Mercado procreó cuatro hijos con la señora Carmen Milagros Fred Monge, a saber, los co-

---

[7] Entrada Núm. 29 de SUMAC. *Resolución* archivada y notificada en autos el 19 de julio de 2021.
[8] Entrada Núm. 30 de SUMAC. *Orden* archivada y notificada en autos el 17 de agosto de 2021.
[9] Entrada Núm. 37 de SUMAC.
[10] Entrada Núm. 55 de SUMAC.
[11] Entrada Núm. 95 de SUMAC.
[12] Apéndice de la *Apelación,* Exhibit 1. Archivada y notificada en autos el 3 de mayo de 2024.

demandados Ángel Rafael Carrero Fred, Yaritza Carrero Fred, Aileen Carrero Fred y Sheila Carrero Fred.

5. Entre los bienes gananciales del matrimonio Carrero Fred se encuentra un Taller de hojalatería y pintura de vehículos de motor llamado Río Grande Auto Body el cual opera hace más de 40 años.

6. Los bienes gananciales del matrimonio Carrero Fred nunca se liquidaron a excepción de una liquidación parcial donde se adjudicó una residencia a favor de la señora Fred Monge.

7. Después que la señora Rosado Rodríguez se casó con el señor Carrero Mercado en el 2010, comenzó a trabajar en el Taller de Hojalatería con su esposo sin un sueldo establecido. Fuera de ayudar a su esposo en el Taller, la señora Rosado Rodríguez no tuvo otro empleo ni generó otros ingresos.

8. La señora Rosado Rodríguez recibió un sueldo de Río Grande Auto Body correspondiente a parte del año 2015.

9. El 5 de junio de 2015, la señora Rosado Rodríguez incorporó Río Grande Auto Body Inc., siendo ella su incorporadora, agente residente, presidenta, secretaria y tesorera. Río Grande Auto Body, Inc. es una corporación doméstica con fines de lucro organizada bajo las leyes del Estado Libre Asociado de Puerto Rico con el número de registro 354711.

10. Posterior a la creación de la Corporación en el 2015, el señor Carrero Mercado y la señora Rosado Rodríguez se mudaron al estado de la Florida. Allá compraron dos inmuebles y abrieron una cuenta de banco. Según el testimonio de la señora Rosado Rodríguez, hoy día todos esos bienes están a su nombre.

11. Luego de meses de enfermedad, el 11 de abril de 2016 falleció intestado el señor Ángel Rafael Carrero Mercado en el estado de la Florida. Los herederos del señor Carrero Mercado son sus cuatro hijos y la señora Rosado Rodríguez en la cuota viudal usufructuaria.

12. El 14 de abril de 2016, la señora Rosado Rodríguez radicó en el Departamento de Estado del Estado Libre Asociado de Puerto Rico, el Informe Anual con su Estado de Situación correspondiente al año 2015 para Río Grande Auto Body, Inc. Ambos documentos fueron estipulados por las partes.

13. Dicho Estado de Situación refleja que en los meses que Río Grande Auto Body, Inc. existió en el 2015, no tuvo actividad comercial y la Corporación no tenía bienes, activos o pasivos.

14. El testimonio de la demandante confirmó que en efecto la Corporación no tiene ningún bien mueble o inmueble en su haber y nunca ha emitido acciones de capital.

15. Existe un vehículo Mercedes Benz, año 2013, tablilla IDF-641, que está a nombre de Popular Auto Inc. La señora Rosado Rodríguez lo utilizó mientras vivió en Puerto Rico con su esposo. El vehículo se obtuvo mediante un contrato de leasing que se pagaba con dinero del Taller Río Grande Auto Body.[13]

Inconforme, el 3 de junio de 2024, la señora Morales Rosario acudió ante nosotros mediante el recurso de *Apelación* e imputó la comisión de los siguientes errores:

1. Erró el TPI al no conceder la solicitud de desistimiento con perjuicio bajo la Regla 39.2 (C) según solicitado por los demandados.

2. Erró el TPI al no resolver en su sentencia el planteamiento de la doctrina de enriquecimiento injus[t]o solicitado por la demandante.

---

[13] *Íd.*, págs. 3-4.

3. Erró el TPI al no conceder la solicitud de la doctrina de enriquecimiento injusto.

4. Erró el TPI al no conceder los daños ni angustias mentales solicitados y demostrados por la demandante.

5. Erró el TPI al no conceder otros remedios en ley disponibles como determinar que a los demandados le corresponde pagar a la parte demandante su partido del usufructo viudal.

Por su parte, el 11 de septiembre de 2024, los Apelados presentaron un *Memorando en Oposición.*

En vista de los errores imputados al TPI, exponemos la normativa jurídica atinente a este recurso.

**-II-**

**A.**

La Regla 39.2 de las de Procedimiento Civil, en su inciso (c), regula la moción de desestimación contra la prueba o por insuficiencia de la prueba, también conocida como *Moción de Non Suit.* Regla 39.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2 (c). La misma le permite a un demandado exponerle al TPI que, a base de la prueba presentada por la parte demandante, no existe evidencia de algún aspecto esencial de la reclamación y que por ello procede la desestimación del pleito o de parte de la reclamación. En lo pertinente, el referido inciso dispone lo siguiente:

> *(c) Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal lo disponga de otro modo en su orden de desestimación, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos.*

Conforme establece la referida regla, luego de la parte demandante concluir la presentación de su prueba, la parte demandada puede solicitar la desestimación del pleito

fundamentado en que la otra parte no tiene derecho a la concesión de un remedio según los hechos probados y el derecho aplicable. De modo que, ante una solicitud de desestimación contra la prueba, el tribunal sentenciador debe aquilatar la prueba presentada hasta ese momento y determinar, a base de su apreciación de los hechos y según la credibilidad que le haya merecido la prueba, si la parte demandante tiene derecho a un remedio o si procede la desestimación solicitada. En ese momento, el TPI debe determinar si la prueba presentada por la parte demandante es suficiente por sí misma para satisfacer los requisitos de su particular causa de acción. *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 915-916 (2011).

Si conforme a la apreciación del juzgador, la parte demandante no presentó prueba suficiente para sostener sus alegaciones, la parte demandada no tiene que defenderse y procede la desestimación de la demanda. *Lebrón v. Díaz,* 166 DPR 89, 94 (2005). Si la prueba presentada por dicha parte tiende a demostrar que bajo alguna circunstancia ésta podría prevalecer, entonces la duda que surge del testimonio de la parte demandante requiere que la parte demandada presente su caso, lo que dará al TPI una visión más completa de los hechos. *Colombani v. Gob. Municipal de Bayamón,* 100 DPR 120 (1971), 122-123.

El mecanismo procesal de la desestimación contra la prueba debe ejercerse después de un escrutinio sereno y cuidadoso de la prueba presentada. Por consiguiente, para que proceda una desestimación contra la prueba el TPI tiene que estar completamente convencido de que la parte demandante no tiene oportunidad de prevalecer. Es decir, no debe desestimarse una demanda contra la prueba a menos que se desprenda con seguridad que la parte demandante no tiene derecho a remedio alguno, bajo cualquiera de los hechos que puedan ser probados. *SLG Sierra v.*

*Rodríguez,* 163 DPR 738, 746 (2005), *Roselló Cruz v. García,* 116 DPR 511, 520 (1985).

**B.**

Por otra parte, conforme a lo dispuesto en la *Ley General de Corporaciones* del 16 de diciembre de 2009 (Ley Núm. 164-2009), según enmendada, 14 LPRA secs. 3501 *et seq.,* el incorporador será responsable de la organización de la corporación hasta que se elijan los directores y podrá tomar las medidas pertinentes para la adopción de los estatutos originales de la corporación. Artículo 1.06, 14 LPRA § 3506.

Sin embargo, el Profesor Carlos E. Díaz Olivo aclara que la función del incorporador "se limita a realizar las gestiones para que la corporación esté en posición de comenzar sus operaciones". Al elegirse a los directores, terminan las facultades de los incorporadores. C.E. Díaz Olivo, *Corporaciones,* 2da ed., 2018, pág. 105.

**C.**

Al igual que otras acciones basadas en los principios de equidad, la reclamación por enriquecimiento injusto sólo procederá cuando no exista ley que provea para otra causa de acción. *Sánchez v. S.L.G. Valentín,* 186 DPR 503 (2012); *Mun. Quebradillas v. Corp. Salud Lares,* 180 DPR 1003 (2011); *ELA v. Cole Vázquez,* 164 DPR 608 (2005); *Ortiz Andujar v. ELA,* 122 DPR 817 (1988). De enriquecimiento injusto se habla propiamente cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente. *ELA v. Cole Vázquez,* 164 DPR 608 (2005), citando a *Ortiz Andujar v. ELA,* supra.

Para que proceda la aplicación de dicha doctrina es necesario que concurran ciertos requisitos básicos, a saber: (1) existencia de un enriquecimiento; (2) un correlativo empobrecimiento; (3) una

conexión entre dicho empobrecimiento y enriquecimiento; (4) falta de una causa que justifique el enriquecimiento; (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. *Sánchez v. S.L.G. Valentín*, supra; *Mun. Quebradillas v. Corp. Salud Lares*, supra; *E.L.A. v. Cole Vázquez*, supra; *Ortiz Andujar v. E.L.A.*, supra.

En nuestro ordenamiento jurídico, los actos y las omisiones en los que intervenga culpa o negligencia son fuentes de obligaciones que generan responsabilidad civil extracontractual. Art. 1042 del Código Civil de 1930, 31 LPRA ant. sec. 2992 (derogado). En específico, el Art. 1802 del Código Civil de 1930, (vigente al momento de los hechos que suscitaron la presente controversia) establecía que quien que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". 31 LPRA ant. sec. 5141 (derogado). Por su parte, el Artículo 1536 del Código Civil de 2020, actualmente vigente, establece que "la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801. En virtud de lo anterior, es norma firmemente establecida en nuestra jurisdicción que, para reclamar el resarcimiento por los daños y perjuicios sufridos al amparo del artículo de referencia, un demandante debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión, el cual tiene que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465 (2022).

Sobre esto último, la jurisprudencia de nuestro Tribunal Supremo ha establecido que la culpa o negligencia consiste en la falta del debido cuidado, que a su vez consiste en no anticipar o prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas

circunstancias. Siempre tomando en consideración que entre ese acto culposo o negligente y el daño causado se debe establecer un nexo causal adecuado. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra.

También es un principio firmemente establecido por la jurisprudencia de nuestro Tribunal Supremo, que, en el ámbito de la responsabilidad civil extracontractual, "el concepto de la culpa es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de una persona que produce un mal o un daño". *López v. Porrata Doria,* 2006 169 DPR 135, 150, (2006). Por eso, los conceptos de culpa y negligencia equivalen al incumplimiento con el deber de cuidado. *Id.* Lo que a su vez concierne, en esencia, en no anticipar o prever las probables consecuencias de los actos, que hubieran sido previstas por una persona prudente y razonable. *López v. Porrata Doria,* supra, en la pág. 151.

### E.

El Art. 761 del Código Civil, 31 LPRA sec. 2411, establece el derecho de usufructo del cónyuge viudo. La porción hereditaria asignada en usufructo al cónyuge viudo deberá sacarse de la tercera parte de los bienes que la ley permite al testador destinar a la mejora de los hijos. Art. 762 del Código Civil, 31 LPRA sec. 762.

Los herederos podrán satisfacer al cónyuge su parte de usufructo, asignándole una renta vitalicia, o los productos de determinados bienes, o un capital en efectivo, procediendo de mutuo acuerdo, y, en su defecto, por virtud de mandato judicial. Mientras esto no se realice, estarán afectados todos los bienes de la herencia al pago de la parte de usufructo que corresponda al cónyuge viudo. Art. 765 del Código Civil, 31 LPRA sec. 2415.

### -F-

Los foros de instancia gozan de amplia discreción en la tramitación de los casos ante su consideración para asegurar la más

eficiente administración de la justicia, por lo que sus decisiones merecen gran deferencia. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 306-307 (2012); *Vives Vázquez v. ELA*, 142 DPR 117, 143 (1996). Específicamente, la discreción que tiene un tribunal de justicia se refiere a su facultad para resolver de una forma u otra, o de escoger entre varios cursos de acción. *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 273 (2021); *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010); *García v. Padró*, 165 DPR 324, 334 (2005). Así, la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 711 (2019); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013). En efecto, la discreción "se nutre de un juicio racional [...] y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". *SLG Zapata- Rivera v. J.F. Montalvo*, supra, pág. 435.

En virtud de lo anterior, la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia. *Citibank et al. v. ACBI et al.*, supra, pág. 735; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 306–307 (2012). Por lo tanto, los tribunales apelativos no deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por este en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. *BPPR v. Gómez-López,* 2023 TSPR 145, 213 DPR ____ (2023); *VS PR, LLC v. Drift-Wind,* supra, pág. 273; *Umpierre Matos v.*

*Juelle, Mejías,* 203 DPR 254, 275-276 (2019); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**-III-**

En su primer señalamiento de error, la Apelante aduce que incidió el TPI al "no conceder la solicitud de *desistimiento* con perjuicio bajo la Regla 39.2 (C) según solicitado por los demandados". En este señalamiento de error la parte apelante argumenta sobre un aspecto que aparenta ser contrario a su propio interés, pues parecería ser que lo que se solicita es que la *desestimación* fuera con perjuicio. Una simple lectura de la *Sentencia* nos permite observar que el foro primario declaró "Ha Lugar la moción de los codemandados al amparo de la Regla 39.2(c) de Procedimiento Civil". Como es conocido, la citada Regla menciona que la desestimación tiene el efecto de una adjudicación en los méritos, a menos que el tribunal en su orden de desestimación disponga lo contrario. Así las cosas, resulta claro el efecto del lenguaje contenido en la Sentencia, aspecto enmarcado dentro de la discreción de la Sala sentenciadora. No le asiste la razón a la apelante al señalar como error que dicha desestimación no fuera con perjuicio, y por tanto, no se cometió el primer error señalado.

En su segundo y tercer señalamiento de error, la Apelante arguye que el TPI erró al no resolver ni conceder en su sentencia la doctrina de enriquecimiento injusto. Adelantamos que no le asiste la razón a la Apelante.

Según esbozado, para que proceda la aplicación de dicha doctrina es necesario que haya existido un enriquecimiento, un correlativo empobrecimiento, una conexión entre estos, falta de una causa que justifique el enriquecimiento y la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. *Sánchez v. S.L.G. Valentín,* supra; *Mun. Quebradillas v. Corp. Salud Lares,* supra; *E.L.A. v. Cole Vázquez,* supra; *Ortiz Andujar v.*

*E.L.A.*, supra. Tal y como como surge del expediente, en el caso ante nuestra consideración no existen los elementos requeridos para la aplicación de la referida doctrina.

En su cuarto señalamiento de error, la Apelante aduce que el TPI incidió al no conceder los daños y angustias mentales solicitados. Finalmente, en su quinto señalamiento de error, la Apelante arguye que erró el TPI al no determinar que a los Apelados les corresponde pagarle su partida del usufructo viudal.

En el caso de autos, el TPI concluyó que no procedía la causa de acción incoada por la Apelante, por insuficiencia de prueba. Surge de la transcripción que el trabajo que alegadamente hizo en el Taller fue su aportación a la compra de unas propiedades en Florida cuya posesión retiene, por lo que no cabe hablar de un pago adicional a ese trabajo que no está evidenciado de ninguna manera. Su único trabajo, según su testimonio, fue ayudar a su esposo, con quien se casó bajo el régimen de total separación de bienes, a administrar el taller, además de gestiones relativas a su propia ocupación.

También surge de la prueba oral que los daños o angustias mentales que sufrió la Apelante fueron exclusivamente causados por la muerte de su esposo, de lo que ninguno de los Apelados tiene responsabilidad alguna. La responsabilidad extracontractual está disponible contra quien por acción u omisión causa daño a otro, interviniendo culpa o negligencia. Por tanto, aquí no hay nadie obligado a reparar un daño.

Cabe destacar que la operación del Taller de hojalatería y Pintura Río Grande Auto Body le pertenecía a la sociedad legal de gananciales entre el señor Carrero Mercado y la señora Fred Monge. Estos decidieron no liquidar los bienes gananciales cuando se divorciaron posteriormente. De hecho, la prueba oral demuestra que

la Apelante estaba enterada de la participación de la señora Fred Monge en el negocio.

Aunque la Apelante incorporó Río Grande Auto Body, Inc., recordemos que el incorporador se limita a realizar las gestiones para que la corporación esté en posición de comenzar sus operaciones. Sin embargo, la corporación nunca tuvo actividad comercial, ni bienes, pasivos o activos. Así lo testificó la Apelante. La corporación solo existe en papel, y no tiene relación alguna con el negocio que operaba su difunto esposo.

Como quinto señalamiento, se alegó que erró el TPI al no conceder otros remedios como determinar que a los demandados les corresponde pagar a la demandante su partida de usufructo viudal. Sin embargo, surge del expediente que el usufructo viudal se discutió en corte abierta y, en su *Sentencia,* el TPI expresamente determina que la Apelante sí tiene derecho al usufructo viudal. Por tanto, contrario a lo señalado por la Apelante, el Foro Primario determinó que esta sí tenía derecho al pago del referido usufructo. Ahora bien, el TPI omitió fijar la cuantía específica por dicho concepto, por lo cual, al devolverse el caso, dicho foro deberá determinar dicha cuantía.

Luego de examinar minuciosamente el expediente de autos, concluimos que no erró el TPI al desestimar el pleito de epígrafe en cuanto a las causas de acción según dispuesto en la discusión que antecede. La Apelante no logró probar que el foro primario actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto.

**-IV-**

Por los fundamentos que anteceden, confirmamos la sentencia apelada, pero devolvemos el caso al TPI a fin de que se establezca la partida específica de usufructo viudal correspondiente

a la apelante, según consignado en la página 14 de la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones